FRANK ROCKEFELLER, APPELLANT, V. MARTIN C. LARICK
ET AL., APPELLEES.

FILED FEBRUARY 8, 1907.   No. 14,657.

Notes: SUBROGATION: EQUITIES.  Where a bank takes collateral under
    such circumstances as not to be an innocent holder, a surety of
    the principal debtor who pays the debt and receives the collateral
    held by the bank takes it subject to equities existing between
    the parties thereto.

APPEAL from the district court for Franklin county:
ED L. ADAMS, JUDGE.   Affirmed.

Kirkpatrick & Schwind, B. P. Finley and J. P. A. Black,
for appellant.

Dorsey & McGrew, contra.

JACKSON, C.

The action was brought in the district court for Frank-
lin county to foreclose a real estate mortgage securing a
promissory note given April 1, 1901, by the defendant to
the Siegel-Sanders Live Stock Commission Company of
Kansas City, Missouri.

The defense is grounded upon the following facts:  At
the time of the execution of the note the defendant was
indebted to the Siegel-Sanders Live Stock Commission
Company, the indebtedness being evidenced by a promis-
sory note secured by a chattel mortgage.  The note in suit
represented the balance due on the indebtedness.   An
agent of the payee took the new note and security upon
the representation that the old note would be surrendered
upon receipt of the extension note by the payee.  The orig-

inal note, however, had been transferred, and was then in the hands of an innocent purchaser, who took the property covered by the chattel mortgage, applied the proceeds upon the indebtedness, and obtained judgment against the defendant for the remainder due. The Siegel-Sanders Live Stock Commission Company is a corporation organized under the laws of the state of Missouri, with the principal place of transacting its business at Kansas City in that state. The plaintiff is the principal stockholder in that corporation and one of its directors. Two banking houses were involved in the transactions, the National Bank of Commerce and the Stock Yards Bank of Commerce, both of Kansas City. The stock of the latter is owned by the former. James A. Patton is the president of the Stock Yards Bank of Commerce and also an officer of the National Bank of Commerce. The Siegel-Sanders Live Stock Commission Company was indebted to these banks in the sum of $29,896.70. They executed a promissory note for that amount payable to the National Bank of Commerce. Before delivery of the note the plaintiff indorsed his name on the back thereof, and this note, together with collateral security, including the note in suit, was placed with the National Bank of Commerce for the purpose of liquidating the overdraft of the commission company. The plaintiff ultimately paid a remainder of $23,000 and took up the note of the commission company. The collateral paper, including the note in suit, was surrendered to him. He claims to be an innocent holder of the note in suit by reason of these transactions.

Mr. Patton, president of the Stock Yards Bank of Commerce, testified as a witness concerning the note for $29,896.70, as follows: "Q. Just state, Mr. Patton, the history of that note—what became of the note finally? A. It was taken up by Mr. Rockefeller. Q. Purchased by him? A. Yes, sir. Q. Describe the course the note took from the time it got into the hands of the bank until Mr. Rockefeller acquired it. A. I took the note myself, as the agent of the National Bank of Commerce, to secure

overdrafts made by Siegel-Sanders Live Stock Commission
Company on our bank, and on the National Bank of
Commerce—and when I say our bank I associate the two
banks together in this testimony, because my impression
is the Siegel-Sanders Live Stock Commission Company
kept its bank account with the Stock Yards Bank of
Commerce—and that this note, being for a larger amount
than the law would allow us to loan as a little bank, I
took the note to the National Bank of Commerce and dis-
counted it, and, as I say, it was to take care of overdrafts
made by the Siegel-Sanders Live Stock Commission Com-
pany at our bank, and Mr. Rockefeller came over and
brought over a bunch of collateral—and in the first place
Mr. Rockefeller gave a guarantee. Q. Just state with ref-
erance to this particular note—just confine it to that note.
A. He offered us this—rather, he says: 'How much does
the firm owe,' and I figured the amount and it amounted to
$29,896.70, and we loaned Siegel-Sanders Live Stock Com-
mission Company this money on the indorsement of Mr.
Rockefeller, and a deposit of about the same amount of
collateral—various notes." At the trial in the district
court there was a decree for the defendant and the plain-
tiff appeals.

His contention is that the National Bank of Com-
merce took the note in suit as an innocent holder, and
that he as a surety to the principal debtor, having paid
the debt, was entitled to hold the collateral free from all
defenses which the maker might set up as against the com-
mission company. We think it unnecessary to inquire
into the relation which the plaintiff sustained toward the
commission company in this transaction, because he took
no greater right, at the most, than that of the National
Bank of Commerce. By stipulation of the parties it is
agreed: "That under the laws of the state of Missouri it
it held that, 'where a negotiable note is transferred merely
as collateral security for a preexisting debt, and no new
consideration given for it, the assignee takes it subject to
all equities existing between the parties to it.'" From the

testimony of Mr. Patton it is clear that the Siegel-Sanders Live Stock Commission Company had an overdraft both at the National Bank of Commerce and at the Stock Yards Bank of Commerce. How much at each bank it does not appear, nor does it seem to be important in view of the fact that the two banks were treated as one concern. The National Bank of Commerce took the collateral from Siegel-Sanders Live Stock Commission Company to secure a preexisting debt, and for no new consideration. It was not, under the law of Missouri, a holder of this paper free from the equities as between the parties.

It follows that the decree of the district court was right, and we recommend that it be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.